UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO MARTINEZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | ) Case No.: 1:12-cv-00669 - JLT <br> ) <br> ) ORDER DIRECTING ENTRY OF JUDGMENT IN <br> ) FAVOR OF DEFENDANT MICHAEL J. ASTRUE, <br> ) COMMISSIONER OF SOCIAL SECURITY AND <br> ) AGAINST PLAINTIFF ROGELIO MARTINEZ <br> ) <br> ) <br> ) <br> ) <br> ) |

Rogelio Martinez, Jr. ("Plaintiff") asserts he is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts the administrative law judge ("ALJ") erred in rejecting the opinion of his treating physician, and appeals the decision denying his application. For the reasons set forth below, the administrative decision is **AFFIRMED.**

**PROCEDURAL HISTORY**

On January 15, 2008, Plaintiff filed an application for benefits, alleging disability beginning November 17, 2008. (Doc. 11-4 at 5). The Social Security Administration denied his claim initially and upon reconsideration. *Id.* After Plaintiff testified at a hearing on July 20, 2009, an ALJ determined Plaintiff was not disabled and denied benefits on October 8, 2009. *Id.* at 5-13.

Plaintiff filed his second application for benefits on November 6, 2009, alleging disability beginning July 21, 2009. (Doc. 11-6 at 4). Again, the Social Security Administration denied his claim

initially and upon reconsideration. (Doc. 11-5 at 80-84, 87-92). After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on October 5, 2011. (Doc. 11-3 at 26). The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on October 31, 2011. *Id.* at 20. Plaintiff requested review by the Appeals Council of Social Security, which denied review of the ALJ's decision on March 2, 2012. *Id.* at 2-4. Thus, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated the action before this Court on April 26, 2012, seeking judicial review of the administrative decision dated October 8, 2009. (Doc. 1). On December 10, 2012, Plaintiff filed his opening brief, asserting the ALJ erred in his evaluation of the medical evidence. (Doc. 13). Defendant filed his opposition on January 9, 2013 (Doc. 14), to which Plaintiff replied on January 15, 2013. (Doc. 15).

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.

§ 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 404.1529.

**A.     Relevant Medical Evidence**

On March 11, 2008, Dr. Lavanya Bobba completed a physical residual functional capacity assessment.  (Doc. 11-8 at 2-6).  She noted Plaintiff's records showed "minimal" symptoms, and his exam results were "fairly unremarkable."  *Id.* at 6.  Dr. Bobba determined Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day.  *Id.* at 3.  She opined Plaintiff's ability to push and pull was unlimited.  *Id.*  According to Dr. Bobba, Plaintiff was able to frequently climb ramps and stairs, balance, stoop, kneel, and crouch.  *Id.* at 4.  In addition, she believed Plaintiff was able to occasionally crawl and climb ladders, ropes, and scaffolds.  *Id.*  Dr. Bobba found Plaintiff was limited to occasional reaching above his shoulder level, but had no further manipulative limitation.  *Id.*  On

May 5, 2008, Dr. Mohamed Nawar affirmed this assessment. (Doc. 11-8 at 10).

An x-ray of Plaintiff's lumbar spine and thoracic spine was taken on May 8, 2008. (Doc. 11-9 at 48). Dr. Tookoian found "[m]ild degenerative changes without other significant abnormality." *Id.* Specifically, Dr. Tookoian found "[t]he intervertebral spaces are unremarkable," and "mild sclerotic changes of the facets at L5-S1." *Id.* Further, there were some "minor osteophytic changes of some of the vertebral body margins." *Id.*

On November 21, 2008, Plaintiff had an MRI of his lumbar spine. (Doc. 11-9 at 42-44). According to Dr. Sean Johnston, the MRI showed: "1-2 mm posterior disc bulge without evidence of canal stenosis or neural foraminal narrowing" at the L2-L5 levels. *Id.* at 43. In addition, Dr. Johnson found Plaintiff had "[m]ild left neural foraminal narrowing secondary to 2-3 mm posterior disc bulge" at the L5-S1 level. *Id.* Dr. Johnston opined the facet joints at L1-L2 were "unremarkable," and there was "no evidence of signal abnormality within the exiting or traversing nerve roots" throughout Plaintiff's lumbar spine. *Id.* at 42.

Dr. Feriba Vesali performed a consultative orthopedic examination on March 9, 2010. (Doc. 11-8 at 54-57). Plaintiff reported "repetitious lifting and driving a water truck . . . injured his back," and he had "constant [and] sharp" pain since April 2006 *Id.* at 54. Plaintiff informed Dr. Vesali that he lost strength in his legs, and pain was caused by standing, sitting, or walking more than five minutes. *Id.* According to Plaintiff, he was able to drive, grocery shop, and do household chores such as dishes, vacuuming, and laundry. *Id.* Dr. Vesali performed straight-leg testing on Plaintiff, and noted the results were negative in the seated position, but in the supine position, it caused low back pain "at 10 degrees of hip flexion." *Id.* at 56. In addition, he found Plaintiff's strength was "5/5 in upper and lower extremities including grip strength." *Id.* Dr. Vesali opined Plaintiff's conditions would not impose limitations for twelve continuous months, and he concluded the number of hours Plaintiff should be able to sit, stand, or walk is "unlimited." *Id.* at 57. Further, Dr. Vesali believed Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. *Id.*

On March 24, 2010, Dr. Khong assessed Plaintiff's physical residual functional capacity. (Doc. 11-8 at 58-62). Dr. Khong noted the consultative examiner found no limitations, and opined medium work was appropriate "considering [his] history." *Id.* at 62. Specifically, Dr. Khong found

Plaintiff was able to lift and carry 25 pounds frequently and 50 pounds occasionally, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. *Id.* at 59.  Further, Dr. Khong opined Plaintiff was able to frequently climb ramps, stairs, ladders, ropes, and scaffolds; stoop; balance; kneel; crouch; and crawl. *Id.* at 60.  According to Dr. Khong, Plaintiff did not have visual, manipulative, communicative, or environmental limitations. *Id.* at 60-61.

Dr. Perminder Bhatia conducted a physical evaluation on April 28, 2010, after Plaintiff was referred to the Neuro-Pain Medical Center for treatment.  (Doc. 11-8 at 145-46).  Plaintiff reported he felt "weak and numb," and "that whenever he tries to get up and walk, his legs gave way." *Id.* at 145. He noted Plaintiff's MRI "showed diffuse disc bulge at L5-S1 with no significant deformity." *Id.*  Dr. Bhatia determined Plaintiff's motor strength was "5/5 in upper and lower extremities." *Id.*  During the sensory exam, Plaintiff had "degreased pinprick in both feet." *Id.*  According to Dr. Bhatia, Plaintiff had a normal gait, but had "[r]estricted movements of the lumbosacral spine." *Id.*

On May 17, 2010, Plaintiff underwent an MRI of his lumbosacral spine.  (Doc. 11-8 at 85- 87). According to Dr. Varun Mitroo, the MRI showed "[d]egenerative changes of the lower lumbar spine at L4-L5 and L5-S1." *Id.* at 87.  In addition, Plaintiff had a "[s]mall annular tear at L4-L5 on the left side, not causing anatomic impingement," which Dr. Mitroo believed "could be resulting in symptoms referable to this level from local inflammatory changes." *Id.*  Further, Dr. Mitroo observed a small, broad-based protrusion at L5-S1, which "deform[ed] the left lateral recess, though without visible anatomic impingement upon the descending left S1 nerve." *Id.*

At a follow-up appointment on May 25, 2010, Dr. Bhatia noted Plaintiff had "significant back pain and spinal stenosis." (Doc. 11-8 at 138).  He determined Plaintiff's gait was normal, his motor strength was "5/5," and his sensory exam was "normal to pinprick, touch, and vibration." *Id.*  Dr. Bhatia found Plaintiff's straight-leg raising test was positive on the left side. *Id.*  Dr. Bhatia opined: "From his condition, he is significantly impaired and cannot work.  No lifting, no bending, no sitting more than half an hour and no standing more than half an hour." *Id.* at 139.

At an appointment with Dr. Bhatia on August 15, 2011, Plaintiff reported he had pain in his back, neck, and arms.  (Doc. 11-8 at 127).  In addition, Plaintiff said his arms were weak. *Id.*  Again, Dr. Bhatia found Plaintiff's power was "5/5 in upper and lower extremities," and his sensory exam

was "normal to pinprick, touch, and vibration." *Id.* Further, he observed Plaintiff's gait was normal. *Id.* Dr. Bhatia opined Plaintiff was unable to sit more than 10 minutes, stand more than 5 to 10 minutes, or lift more than 5 pounds at a time. *Id.* at 128.

Dr. Paul Frye completed a review of Plaintiff's medical records and a residual functional capacity assessment on August 24, 2010. (Doc. 11-8 at 107-14). Dr. Frye noted Plaintiff's treating physician said he had possible spinal stenosis, but this was not found on the MRI. *Id.* at 114. He observed Plaintiff's gait and "motor-sensory-reflex exams" were normal, and Plaintiff had "mild" symptoms with "occasional" signs. *Id.* Dr. Frye determined Plaintiff was able to perform the exertional requirements of light work with postural limitations. *Id.* at 108, 114. Specifically, Dr. Frye believed Plaintiff could occasionally stoop; crouch; and climb ramps, stairs, ladders, ropes and scaffolds. *Id.* at 109. However, Plaintiff was able to frequently balance, kneel, and crawl. *Id.*

On September 28, 2010, Dr. Bhatia completed several questionnaires regarding Plaintiff's physical abilities. (Doc. 11-8 at 115-26). Dr. Bhatia diagnosed Plaintiff with lumbar degenerative disc disease and spinal stenosis, and believed his prognosis was poor. *Id.* at 115, 120. According to Dr. Bhatia, Plaintiff had a positive straight leg raising test, decreased range of motion, an abnormal gait, sensory loss, reflex changes, tenderness, crepitus, muscle spasm, and impaired sleep. *Id.* at 116. He opined Plaintiff was able to walk a quarter of a city block, stand for 10 minutes at a time, and sit up to 10 minutes before needing to stand[1]. *Id.* at 116-17, 121. Further, Dr. Bhatia believed Plaintiff could sit, stand, and walk for thirty minutes total in an eight-hour workday. *Id.* at 117. He noted Plaintiff would require periods of walking around every five minutes, and must walk for ten minutes each time. *Id.* at 117, 122. He believed Plaintiff could never lift weights less than 10 pounds, and could never twist, stoop (bend), crouch, squat, or climb. *Id.* at 118. Dr. Bhatia concluded Plaintiff was "not able to work." *Id.* at 121.

On November 10, 2010, Dr. Bhatia noted Plaintiff's motor strength was "5/5 in upper and lower extremities," and his sensory exam was "normal to pinprick, touch, and vibration." (Doc. 11-8 at 135). Plaintiff's gait was normal, and his "[f]inger-to-nose and knee-to-heel test" was normal. *Id.*

---

[1] In one assessment, Dr. Bhatia indicated Plaintiff could sit 10 minutes at one time. (Doc. 11-8 at 116). In another, Dr. Bhatia indicated Plaintiff could sit only 5 minutes. *Id.* at 121.

He changed Plaintiff's prescription from Motrin to Relafen, and recommended he "try doing stretching exercise." *Id.* at 136. Further, Dr. Bhatia opined Plaintiff was "permanent[ly] disabled," noting "he cannot sit more than 15 to 20 minutes and he cannot stand more than 15 to 20 minutes." *Id.*

Dr. Bhatia examined Plaintiff on August 15, 2011, and observed his gait was normal, and his sensory exams were normal. (Doc. 11-9 at 50). In addition, Dr. Bhatia found Plaintiff's "[f]inger-to-nose and knee-to-heel test" was normal. *Id.* However, Plaintiff's straight leg test was positive on the left side and he had "[s]ignificant restricted movements of lumbosacral spine." *Id.* Dr. Bhatia recommended Plaintiff continue his treatment, including physical therapy. *Id.* Dr. Bhatia opined Plaintiff could not "sit more than 10 minutes" because he "start[ed] having more pain going towards the left leg." *Id.*at 51. Dr. Bhatia believed Plaintiff was unable to stand "more than 5 to 10 minutes" due to scoliosis, or "lift more than 5 pounds at a time" due to the degenerative changes in his back. *Id.*

**B.     Hearing Testimony**

Plaintiff estimated he could lift and carry "[a]bout four or five pounds." (Doc. 11-3 at 34). He believed he was able to sit "about five, 10 minutes" at a time, and walk for ten minutes before he needed to sit and rest. *Id.* Plaintiff said he had difficulty concentrating, and believed he was only able to concentrate for one hour at a time because it was "hard to continue paying attention when . . . in pain." *Id.* at 34-35. According to Plaintiff, he spent "a good three hours" lying down or elevating his feet during the day. *Id.* at 36.

Plaintiff believed he was able to bend occasionally, but not frequently, because he was able to bend over to put on socks and shoes and wash his feet. (Doc. 11-3 at 36). Further, Plaintiff testified he was able to do household chores, including cooking twice and day and washing the dishes, emptying the trash once a day, watering the lawn for half an hour each day, cleaning the kitchen once a day, sweeping once a day, and vacuuming every other day. *Id* at 42-44. He stated sweeping and mopping, and scrubbing the restroom took "a good 45 minutes or more, maybe an hour because of the pain." *Id.* at 58. Plaintiff reported he was able to drive, and went to the grocery store once a week. *Id.* at 40.

**C.     The ALJ's Findings**

As an initial matter, the ALJ noted Plaintiff had filed an application that was denied on

October 8, 2009, and applied the doctrine of *res judicata* through the date of the first decision. (Doc. 11-3 at 11). Accordingly, the period of time adjudicated by the ALJ began October 9, 2009. *Id.*

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity since October 8, 2009. (Doc. 11-3 at 13). Second, the ALJ found Plaintiff's lumbar degenerative disc disease with radiculopathy was a severe impairment. *Id.* Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing, including Listing 1.04. *Id.* at 13-14.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday; and occasionally climb, crouch, and stoop." (Doc. 11-3 at 14). With this RFC, the ALJ found Plaintiff was unable to perform any past relevant work, but found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 17-18. Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 19.

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ set forth "insufficient" reasons for rejecting the opinion of his treating physician, Dr. Bhatia. (Doc. 13 at 10-11, 15). On the other hand, Defendant asserts the ALJ set forth legally sufficient reasons to reject the opinion of Dr. Bhatia, supported by substantial evidence in the record. (Doc. 14 at 7-11).

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2).

An ALJ may reject the controverted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v.*

8

*Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The opinion of an examining physician may be rejected whether or not the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751.

   1. The ALJ's reasoning

In the discussion of the medical evidence, the ALJ noted "little weight" was given to the opinion of Dr. Bhatia. (Doc. 11-3 at 17). The ALJ determined the opinion was "not consistent with the overall record, including the claimant's testimony of his fairly wide range of activities of daily living." *Id.* In addition, the ALJ opined Dr. Bhatia's opinion was "internally inconsistent" and relied upon complaints that could be "subjectively manipulated." *Id.* Finally, the ALJ noted the opinion of Dr. Bhatia that Plaintiff was disabled "invade[d] on an opinion reserved to the Social Security Administration." *Id.* These may constitute specific, legitimate reasons for giving less weight to the opinion of Dr. Bhatia.

    *a.* *Plaintiff's daily activities*

The opinion of a physician may be discounted where it is inconsistent with a claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff contends his activities are consistent with the pain alleges, arguing:

> Mr. Martinez testified that he drives there times a week, lives with his wife (who works) and daughter (who is in school) and that he can take care of his personal needs such as shaving, using the toilet, and feeding himself. (A.R. 40- 42). Mr. Martinez testified that he goes shopping once a week, church twice a month, and reads and watches sports to pass time. (A.R. 44-45). Mr. Martinez elaborated on his daily activities and testified that when he takes a shower or cleans it takes a long time due to pain. (A.R. 56-57). Mr. Martinez testified that he ices his back three to four times a day for a half hour to an hour. (A.R. 57-58).

(Doc. 13 at 15). Plaintiff concludes "it cannot be reasonabl[y] asserted that *de minimus* tasks such as shaving, using the toilet, driving, shopping once a week and taking long showers due to pain represent

9

a 'wide range of activities of daily living' contradicting Dr. Bhatia's assessment . . ." *Id.* Significantly, in so arguing, Plaintiff ignores the fact that ALJ found his subjective complaints lacked credibility.[2] Further, Plaintiff ignores his many of the activities which the ALJ found were "not fully consistent with his allegation of total disability." (Doc. 11-3 at 15).

As noted by the ALJ, Plaintiff testified that he was able to perform house chores and "cooks twice a day, does dishes twice a day, dresses, bathes and showers by himself, empties the trash daily, and waters the lawn three time a week for ½ hour each time." *Id.* at 15, 17. In addition, the ALJ noted Plaintiff testified he "cleans the bathroom once a week, sweeps and mops daily, vacuums every other day, . . . [and] grocery shops once a month." *Id.* Further, Plaintiff walked once a week, although he said his doctors told him to exercise at least every other day. *Id.* The ALJ determined these activities were inconsistent with Dr. Bhatia's opinion, including the determination that Plaintiff was limited to sitting and standing for ten minutes at a time for a total of a ½ hour each. *Id.* at 17. Accordingly, this was a specific, legitimate reason for giving less weight to the opinion of Dr. Bhatia. *See Rollins*, 261 F.3d at 856 (where the treating physician set forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in," the ALJ set forth an adequate reason for giving the opinion less weight).

### b.  *Plaintiff's subjective complaints*

The Ninth Circuit has determined an ALJ may give less weight to the opinion of a physician where it is based upon a claimant's subjective complaints that have been rejected by the ALJ. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The Court explained: an opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints themselves have been properly discounted." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1563-64 (9th Cir. 1995)).

Here, the ALJ found Plaintiff's subjective complaints lacked credibility for a number of reasons, including Plaintiff's daily activities, inconsistent statements, inconsistencies with statements

---

[2] Notably, Plaintiff does not appeal the ALJ's decision to reject his credibility.

and actions, and test results that suggested Plaintiff was exaggerating or malingering. (Doc. 11-3 at 15). For example, the ALJ noted Plaintiff "testified that he is able to speak, read, and write in English, but in his disability review he had earlier indicated he does not speak English." *Id.* In addition, the ALJ observed Plaintiff "exaggerated at the hearing," and "stated he could sit for five to 10 minutes at the maximum, but didn't stand up for almost 30 minutes." *Id.* Further, Plaintiff "changed his testimony and made some inconsistent statements" regarding compliance with treatment. *Id.* These are proper considerations in a credibility determination. *See Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002) ("the ALJ may consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, unexplained, or inadequately explained, failure to seek treatment, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains").

The ALJ observed: "Dr. Bhatia based his conclusion based on the claimant pain, sleepiness, and decreased range of motion, all of which can be subjectively manipulated." (Doc. 11-3 at 17). For example, the ALJ noted the large variance in the results of Plaintiff's straight leg testing was "generally indicative of . . . exaggeration or malingering," because Plaintiff "exhibited positive straight leg raises in the supine position at 10 degrees, yet straight leg raises were negative in the sitting position." *Id.* at 15. Dr. Bhatia's reliance upon Plaintiff's subjective complaints was a specific, legitimate reason for giving less weight to the opinion given that the complaints were discounted by the ALJ in his credibility determination. *See Fair,* 885 F.2d at 605; *Andrews,* 53 F.3d at 1041.

        c.      *Internal inconsistencies*

The Ninth Circuit explained an opinion may be rejected where a physician offers conflicting opinions. *See, e.g., Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permissibly rejected treating physician's opinion containing contradictory observations); *Gonzales v. Astrue*, 2012 U.S. Dist. LEXIS 45595 (E.D. Cal. Mar. 30, 2012) (ALJ did not err rejecting an opinion containing inconsistent statements). Here, the ALJ concluded Dr. Bhatia's opinion was "internally inconsistent"

11

because Dr. Bhatia indicated Plaintiff "could sit or stand for 10 minutes, but also stat[ed] the claimant must walk every five minutes." (Doc. 11-3 at 17). Thus, the inconsistency identified by the ALJ was a specific, legitimate reason for giving less weight to the opinion.

### d. Other medical evidence

An ALJ may reject an opinion unsupported by medical findings and test reports. *See Burkhart v. Bowen,* 856 F.2d 1335, 1339-40 (9th Cir.1988). When an ALJ determines a treating physician's opinion is unsupported by objective medical evidence, the ALJ has a burden to "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *Thomas*, 278 F.3d at 957.

The ALJ observed, "with the exception of the exaggerated supine straight leg raises, the consultative examination was essentially normal." (Doc. 11-3 at 17). In addition, the ALJ noted: "Dr. Bhatia references 'spinal stenosis' (Exhibit 14 F, p. 4), yet the actual MRI reports do not confirm stenosis and in fact indicate there is no actual visible impingement (Exhibit 8F, p. 3; 9F, p. 3)." *Id.*

Plaintiff contends "the assertion that the MRI reports do not confirm stenosis is flat out false." (Doc. 13 at 16). According to Plaintiff, "The November 2008 report revealed L5-S1 mild neural foraminal narrowing secondary to 2-3 posterior disc bulge (A.R. 395-396). Neural foraminal narrowing is stenosis." *Id.* (citing http://www.laserspineinstitute.com/back_problems/foraminal_narrowing/def). Thus, Plaintiff argues the MRI results cannot support the ALJ's decision to reject the opinion of Dr. Bhatia. *Id.*

On the other hand, Defendant argues the ALJ referred to the MRI from 2010, which did not demonstrate spinal stenosis. (Doc. 14 at 9). Defendant asserts: "Dr. Bhatia had suspected stenosis in April 2010 (Tr. 292), but since the MRI did not confirm this suspicion (Tr. 294), his continued reference to stenosis was only speculative and not supported by objective evidence." (Doc. 14 at 9). In reply, Plaintiff argues: "presumably, Dr. Bhatia was aware of the November 2008 MRI and thus his opinion was not speculative." (Doc. 15 at 4).

As argued by Plaintiff, the ALJ appears to conclude *none* of the MRI reports show stenosis, although the ALJ cites only the reports from 2005 and 2010 in support of his findings. (Doc. 11-3 at

17). Consequently, while the 2005 and 2010 MRI reports support the ALJ's findings, the MRI from 2008 undermines the ALJ's decision to give less weight to the opinion Dr. Bhatia.

        *e.*      *Issue reserved for the Commissioner*

The determination of whether a claimant is disabled is reserved for the Commissioner, and statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. § 404.1527(e). Recently, this Court explained that "an ALJ is not obligated to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability." *James v. Astrue*, 2012 U.S. Dist. LEXIS 139929, at * 25 (E.D. Cal. Sept. 27, 2012) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). Dr. Bhatia's belief that Plaintiff was "disabled" is a statement "that would direct the determination or decision of disability." *See* 20 C.F.R. § 404.1527(e). Accordingly, it is an issue reserved for the Commissioner, and the ALJ's rejection of Dr. Bhatia's statement was proper.

      2.      Substantial evidence supports the determination

In a Social Security Ruling[3], the Commissioner explained the term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion *need not* prove by a preponderance that the opinion is wrong." 1996 SSR 4 LEXIS 9 at *8. Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.* Significantly, the opinion of an examining physician may be substantial evidence in support of the ALJ's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

As noted by the ALJ, the results from Plaintiff's consultative examination with Dr. Vesali were "essentially normal." (Doc. 11-3 at 17). Dr. Vesali determined Plaintiff had "normal muscle bulk, strength, and tone." *Id.* at 16 (citing Doc. 11-8 at 56). Although Dr. Vesali noted Plaintiff had tingling and numbness in the left foot, Plaintiff had "otherwise normal sensation in the bilateral upper

---

[3] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

and lower extremities." *Id.* Having tested Plaintiff's strength, range of motion in the lumbar and cervical spine, and senses, Dr. Vesali concluded Plaintiff was able to perform work in an eight-hour day without restriction. *Id.* (citing Doc. 11-8 at 57). Accordingly, the opinion of Dr. Vesali is substantial evidence.

Moreover, the opinion of Dr. Frye, a non-examining physician, supports the ALJ's decision. The Ninth Circuit explained, "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Frye noted the MRI from 2010 did not show spinal stenosis, and he concluded Plaintiff was able to perform the exertional requirements of light work, with postural limitations to "occasionally climb, crouch, and stoop." (Doc. 11-3 at 17) (citing Doc. 11-8 at 107-14). The ALJ found this opinion was "consistent with the overall record including the positive MRI and EMG findings." *Id.* Further, Dr. Frye's opinion is consistent with the opinion of Dr. Vesali that Plaintiff was not precluded from work. Accordingly, his opinion is substantial evidence in support of the ALJ's determination that Plaintiff is not disabled as defined by the Social Security Act.

## CONCLUSION AND ORDER

As set forth above, the ALJ set forth several reasons to give less weight to the opinion of Dr. Bhatia. As noted by the ALJ, the opinion was internally inconsistent, and Dr. Bhatia offered conclusions based, at least in part, upon Plaintiff's subjective complaints which the ALJ rejected. Further, the ALJ found the limitations set forth by Dr. Bhatia were inconsistent with Plaintiff's level of activity. Although Dr. Bhatia opined Plaintiff was "disabled," this encroached upon an issue reserved for the Commissioner. These are specific, legitimate reasons for giving less weight to the opinion.

The Ninth Circuit explained, "The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision, the ALJ's conclusion must be upheld").

Because the ALJ's conclusion is supported by substantial evidence, the ALJ's conclusion that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Rogelio Martinez.

IT IS SO ORDERED.

Dated: **January 25, 2013**                     /s/ Jennifer L. Thurston
                                                         UNITED STATES MAGISTRATE JUDGE